IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SARNOVA HC, LLC, et al., | : |
| | : Case No. 2:21-cv-0601 |
| | : |
| Plaintiffs, | : CHIEF JUDGE ALGENON L. MARBLEY |
| | : |
| | : Magistrate Judge Deavers |
| LESTER REETZ, et al., | : |
| | : |
| | : |
| Defendants. | : |

**OPINION & ORDER**

**I. INTRODUCTION**

Before the Court is a Motion for a Temporary Restraining Order ("TRO") by Plaintiffs Sarnova HC, LLC ("Sarnova") and Tri-anim Health Services, Inc. ("Tri-anim") (together, the "Company"). (ECF No. 3). This Court held a hearing on the motion on Wednesday, February 24, 2021. (ECF No. 6). For the reasons that follow, the Court **DENIES** the Company's Motion [#3].

**II. BACKGROUND**

Tri-anim sells and distributes medical products to hospitals, health systems, and other patient care facilities throughout the United States. (ECF No. 3-1 at 1). Among those products is the Curaplex® line of anesthesia, respiratory, and critical care products, which the Company owns. (*Id.*). Sarnova is Tri-anim's parent company.[1]

In June 2015, the Company hired Defendant Noah Pearson ("Mr. Pearson") as an Account Manager to manage Tri-anim customer accounts in Houston, Texas and the surrounding area. (*Id.*).

---

*See* SARNOVA, https://www.sarnova.com/.

1

Defendants describe that Mr. Pearson "was trained and instructed to primarily distribute and sell" six products: nebulizers, lung-expansion devices, secretion clearance devices, BiPAP masks, disposable bronchoscopes, and disposable laryngoscopes. (ECF No. 10 at 5). A few months after hiring Mr. Pearson, the Company also hired Defendant Lester Reetz ("Mr. Reetz") as Regional Sales Director to oversee customer accounts in the Southwest Region. (ECF No. 3-1 at 1).

Following Mr. Reetz's hire, Mr. Pearson reported directly to Mr. Reetz, and they worked together for approximately four years. (*Id.* at 2). Mr. Reetz and Mr. Pearson were the only Tri-anim employees who regularly interacted with many of the Company's key customers in their territory and region, and they were empowered to negotiate pricing and approve discounts with customers on specific sales. (*Id.* at 3). They also had access to the Company's confidential sales information, including actual and future gross profit and sale revenue, and a database of Tri-anim's nationwide sales and customer records. (*Id.*).

Both Mr. Pearson and Mr. Reetz (together, "Defendants") entered into agreements regarding future competition with the Company. Mr. Pearson entered into a Non-Competition, Non-Solicitation, and Confidentiality Agreement with the Company on June 4, 2015 ("Employment Agreement"), shortly after he began working for Tri-anim. (ECF No. 2, Ex. A). The Employment Agreement contains several restrictive covenants that prohibit Mr. Pearson from competing with the Company, including in the following ways: hiring or inducing any Company employee; soliciting or diverting any of the Company's customers; selling or marketing to the Company's customers; and disclosing or using the Company's confidential information. (*Id.*). The Employment Agreement restricts Mr. Pearson's competitive activities for one year following the end his employment with the Company, subject to Ohio law. (*Id.* § 1).

Mr. Reetz entered into a Grant Agreement with the Company under its Stock Option Plan ("2017 Stock Agreement") on January 29, 2017. (ECF No. 2, Ex. C). Per the 2017 Stock Agreement, Mr. Reetz agreed not to compete against the Company or solicit its customers of employees for 18 months after his employment. (*Id.* § 14). He also promised not to use or disclose the Company's confidential information, work product, and trade secrets for the same period of time. (*Id.* § 13). The 2017 Agreement is subject to Delaware law.[2] (ECF No. 2, Ex. C § 14).

In early March 2020, Mr. Reetz announced that he was resigning from his position, and the Company accepted his resignation on March 13, 2020. Mr. Reetz took a position at Avanos, which is a company that develops, manufactures, and sells various medical supplies throughout the U.S. and other countries.[3] According to the Company, approximately a week before Mr. Reetz announced his resignation at Tri-anim, he sent confidential sales analysis information ("Sales Analysis Chart") to his personal email account from his Company email account. (ECF No. 3-1 at 3). According to the Company, the Sales Analysis Chart contained actual and planned sales revenue, adjusted gross profit, and gross margin percentages for each Regional Sales Director and Account Manager at Tri-anim. (*Id.*).

---

[2] The parties dispute whether the 2017 Grant Agreement and its restrictive covenants bind Mr. Reetz. Defendants submit that a later agreement, the 2018 Award Agreement under the Trout, Inc. Stock Appreciation Rights Plan ("2018 Award Agreement"), supersedes the 2017 Grant Agreement. (ECF No. 10 at 15−18). Furthermore, Defendants emphasize that the 2018 Award Agreement does not contain restrictive covenants. The restrictive covenants appear in a document attached to the 2018 Award Agreement: the Trout Inc. Stock Appreciation Rights Plan (the "2018 Plan"). (*Id.* at 8). Defendants argue that there is no evidence that Mr. Reetz was provided a copy of the 2018 Plan prior to executing the 2018 Award Agreement or was made aware that he would be subject to restrictive covenants by signing the 2018 Award Agreement. (*Id.* at 17).

[3] Among the products they manufacture are three respiratory products—Closed Suction Catheters, Endotracheal Tube Clearing Systems, and Oral Care Kits—which Defendants describe as "critical to the fight against Covid-19." (*Id.* at 5). Defendants contend that Avanos is not a direct competitor with the Company. (*Id.* at 7).

The Company alleges that Mr. Reetz also continued to speak with Mr. Pearson after the Company and recruited him to join Avanos. (ECF No. 3-1 at 3). Mr. Pearson received an offer of employment from Avanos on June 4, 2020. (*Id.* at 2). One week later, before he informed Tri-anim that he had accepted another position, the Company believes that Mr. Pearson created a list of Tri-anim's customer contact information ("Customer Contact List") using a Google account to use in his new position.[4] (*Id.* at 4). The Company describes attempting to interview Mr. Pearson about the nature of his new role and whether it would compete against Tri-anim, but that Mr. Pearson refused to disclose the details of his Avanos position. (*Id.*). At Avanos, Mr. Reetz's title is Respiratory Health Sales Manager, and Mr. Pearson is an Account Consultant, Respiratory Health. (ECF No. 3-1 at 5; ECF No. 2, Exs. K, L).

After Mr. Reetz and Mr. Pearson began working for Avanos, the Company describes that it attempted to effectuate the return of the Company's confidential information without judicial intervention, beginning on August 7, 2020.[5] (ECF No. 3-1 at 4). Counsel for the two parties exchanged correspondence in September and October of 2020. (*Id.* at 5). During this period, Defendants did not return any information to the Company. (*Id.*).

---

[4] Defendants contend that this list "does not contain any actual Tri-anim customer information, but is a generic form that includes fictitious names like Jane Smith, 'ABC Corp,' and 'KyZ Plumber.'" (ECF No. 10 at 6).

[5] Defendants, on the other hand, say the Company has never requested them to return these two documents. (ECF No. 10 at 7). The August 7, 2020 letter from the Company states the following:

> Under no circumstances are you to have retained or used Tri-anim's confidential and trade secret information, including customer contact information, to solicit your former accounts to the damage of Tri-anim.
>
> The company demands that you return to me all confidential material, including without limitation, catalogs, price lists, and customer information and records, within seven days of your receipt of this letter, and that you certify to me in writing that you not retained [sic] any copies of that material.

(ECF No. 2, Exs. F, G).

The Company issued a final demand letter to Defendants on January 25, 2021. (*Id.*). According to the Company, Mr. Reetz and Mr. Pearson "returned a handful of product brochures and product samples" on January 28, 2021, but did not return the confidential Sales Analysis Chart or the Customer Contact List. (*Id.* at 6).

On February 9, 2021, the Company filed a Complaint against Mr. Reetz and Mr. Pearson in the Franklin County Court of Common Pleas. (ECF No. 2). On that same day, the Company also filed a Motion for Temporary Restraining Order and a Motion for Preliminary Injunction. (*See id.*). Defendants removed the case to this Court on February 10, 2021, and the Complaint was docketed in the Southern District of Ohio on February 12, 2021 (*Id.*). This filing included the Complaint, its exhibits, and the other motions that the Company filed in the Court of Common Pleas. The Company's Motion for Temporary Restraining Order and Motion for Preliminary Injunction were docketed separately in the Southern District on February 17, 2021. (ECF Nos. 3, 5).

### III. STANDARD OF REVIEW

A temporary restraining order is an emergency measure. *Hartman v. Axton*, No. 2:20-CV-1952, 2020 WL 1932896, at *1 (S.D. Ohio Apr. 21, 2020) (citing *McGirr v. Rehme*, No. 16-464, 2017 WL 1426456, at *2 (S.D. Ohio Apr. 21, 2017)). Federal Rule of Civil Procedure 65(b) requires a Court to examine, on application for a temporary restraining order, whether "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b)(1)(A). A temporary restraining order is meant "to prevent immediate and irreparable harm to the complaining party during the period necessary to conduct a hearing on a preliminary injunction." *Dow Chemical Co. v. Blum*, 469 F. Supp. 892, 901 (E.D. Mich. 1979). Courts in the Sixth Circuit address four factors

when determining whether to grant a temporary restraining order: (1) whether the movant shows a 'strong' likelihood of success on the merits; (2) whether the movant would suffer irreparable injury if the injunction is not granted; (3) whether the issuance of an injunction would cause harm to others; and (4) whether an injunction would serve the public interest. *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc). The Court balances are these factors against one another. *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008).

To obtain temporary injunctive relief, it is of paramount importance that the party establish immediacy and irreparability of injury. *See Doe v. Univ. of Cincinnati*, No. 1:15-CV-600, 2015 WL 5729328, at *1 (S.D. Ohio Sept. 30, 2015) (noting that "standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo") (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2 (1977)). While a Court is permitted to consider the other factors, immediacy and irreparability of harm are threshold considerations since a temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo." *Marshall v. Ohio Univ.*, No. 2:15-CV-775, 2015 WL 1179955, at *4 (S.D. Ohio Mar. 13, 2015) (citing *Proctor & Gamble Co. v. Bankers Trust Co.,* 78 F.3d 219, 226 (6th Cir.1996)). The "burden of proving that the circumstances 'clearly demand' such an extraordinary remedy is a heavy one" since the party seeking "the injunction must establish its case by clear and convincing evidence.'" *Id.* (citing *Overstreet v. Lexington–Fayette UrbanCnty. Gov't,* 305 F.3d 566, 573 (6th Cir.2002); *Honeywell, Inc. v. Brewer–Garrett Co.,* 145 F.3d 1331 (6th Cir.1998)).

## IV. ANALYSIS

The Company's proposed TRO asks the Court to order Mr. Reetz and Mr. Pearson: (1) to return information they acquired from their employment with Tri-anim and allegedly kept after their employment ended; (2) not to use or disclose Tri-anim's trade secrets or confidential information; and (3) not to solicit Tri-anim's customers or employees, per contractual commitments they made with the Company. The Company's motion for injunctive relief does not ask the Court to prohibit Mr. Reetz and Mr. Pearson from continuing to work for Avanos.

### A. Immediacy of Harm

The first factor the Court must consider in determining whether to grant the Company's request for emergency relief is the immediacy of the harm it faces. This Court has emphasized the "paramount importance" that a plaintiff establishes "immediacy and irreparability of injury" in order to receive a temporary restraining order because they are "threshold considerations." *Hartman*, 2020 WL 1932896, at *2.

Courts regularly deny an employer's request for injunctive relief when the employer delays seeking judicial relief after a former employee begins working for a competitor. For example, in *Total Quality Logistics, LLC v. III's Hotshot, Inc.*, the court found that the employer's ten-month "delay in bringing its claims severely undermine[d] its request for emergency injunctive relief." No. 1:17-CV-352, 2017 WL 5972001, at *4 (S.D. Ohio Dec. 1, 2017) (denying the employer's motion for a preliminary injunction). Similarly, in *Areo Fulfillment Servs., Inc. v. Tartar*, the First District of Ohio affirmed the denial of an employer's request for injunctive relief in part because the employer waited nearly ten months to enjoin the former employee. 2007-Ohio-174, 2007 WL 120695, at *5 (1st Dist. Jan. 19, 2007). The court found that the "considerable" delay "substantially weakened" its assertion of irreparable harm. *Id.* ("The lack of urgency in filing the injunctive-relief

motion militated against a finding or irreparable harm."). The Ohio Court of Appeals reversed a lower court's issuance of a preliminary injunction in *Kyrkos v. Superior Bev. Grp., Ltd.*, where the employer "did not assert its rights under the non-compete agreement for five months after" the employee began working for a competitor, despite having notice of the new employment. 2013-Ohio-4597, 2013 WL 5676256, at *3 (8th Dist. Oct. 13, 2017).

Here, Mr. Reetz resigned from Tri-anim nearly 11 months ago and told Tri-anim he was leaving to work at Avanos at that time. (Reetz Decl. ¶ 4). Mr. Pearson resigned from Tri-anim almost eight months ago. (ECF No. 3-1 at 4). The Company admits that it concluded Mr. Pearson created a customer contact list with its confidential customer information after conducting a forensic analysis his computer in July 2020. (ECF No. 2, Ex. E). The Company also acknowledges that it first began seeking the return of its confidential information from Defendants on August 7, 2020. (ECF No. 3-1 at 4). Despite having this knowledge, the Company did not seek intervention from this Court to enforce the restrictive covenants or recover confidential information for six more months. This significant delay severely undermines the Company's request for a temporary restraining order because its lack of urgency suggests that it does not need immediate injunctive relief. Accordingly, the Company fails to demonstrate the threshold of immediacy of harm in its quest for emergency relief.

### B. Irreparability of Harm

In conjunction with the immediacy of the harm the Company faces, the Court must also consider the potential of irreparable harm. Fed. R. Civ. P. 65 (b)(1)(A). In general, the Sixth Circuit finds that an employer is likely to suffer irreparable harm when an employee breaches a noncompetition covenant, due to loss of fair competition. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992); *see also AK Steel Corp. v. Miskovich*, No. 1:14CV174, 2014 WL

8

11881030, at *5 (S.D. Ohio Mar. 3, 2014) (finding that "loss of goodwill and fair competition is likely to irreparably harm an employer"). As described, above, however such claims must be brought expeditiously in order to secure emergency relief, absent evidence of irreparable harm. *Aero Fulfillment Servs., Inc.*, 2007 WL 120695, at * 5−6 (emphasizing that there was no evidence that the employer had lost customers to its former employee's new company and denying injunctive relief).

The Company submits that it will suffer irreparable injury in the absence of a temporary restraining order against Mr. Reetz and Mr. Pearson, relying primarily on the fact that Mr. Pearson and Mr. Reetz allegedly possess critical information about its "customer contacts, pricing, discounts, purchasing agreements, strategic imperatives, marketing plans, and other trade secrets and confidential information." (ECF No. 3-1 at 14). The Company argues that Defendants will inevitably use the Company's "goodwill, relationships and information" to gain an unfair competitive advantage in the future, which it says would "clearly inflict irreparable harm." (*Id.*). Moreover, the Company believes that Defendants "are soliciting the same hospitals and healthcare providers Tri-anim trusted them to work with on its behalf" currently. (*Id.*).

The Company, however, has not offered any evidence that Defendants have actually misused confidential information or solicited the Company's customers. During the hearing, the Company pointed to a decrease in its sale or profits, but the Company was not able to establish a nexus between the decrease and any breach or action on the part of the Defendants. This missing link is particularly problematic here, since Mr. Reetz and Mr. Pearson have possessed the information at issue and have been employed by Avanos for several months, providing ample time for such evidence to emerge. Because the Company has not shown it has experienced or currently faces irreparable harm without a temporary restraining order, emergency relief is not warranted.

Having found that the Company has not established the threshold considerations of immediacy or irreparability, the Court **DENIES** the Company's motion for a temporary restraining order without analyzing the other injunctive relief factors. The Court wishes to make clear, however, that it is not ruling at this time on whether the terms of the various agreements are enforceable—the Company may very well be able to show that it has or could experience irreparable harm at a hearing on a its pending Motion for Preliminary Injunction. The Court reserves ruling on the merits of the Company's claims of breach of contract and misappropriation of trade secrets until a later time, but the Company has not met its burden in showing that it faces immediate, irreparable harm now.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** the Company's motion for a temporary restraining order [#3].

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: April 5, 2021**